On behalf of the Avalon, Ms. Tamara Marshall. On behalf of the Avalon, Mr. J.K. Thurigy. Good morning. I do have to make an announcement here this morning before we begin the arguments. Justice Robert Spence is also a member of this panel on this case. So he could not be here this morning. However, he will be listening to the oral arguments by way of audio tape, has the briefs, access to the record. And he will, of course, be a fully participating member of the panel in arriving at a disposition in this case. So with those thoughts in mind, Ms. Marshall, you may proceed. Thank you. Good morning. Nate, please, the court counsel. The applicable case law, as stated in the appellant's brief, tells us that the proceeds from the sale of Mr. Marsh's stock is in fact income. And that the increase in net worth test that the trial court applied to determine whether it was in fact income was an error. Before you too far into the merits of that argument, as a threshold question, you are arguing that our standard of review here is de novo. Looking at the briefs, it appears that the Respondent's counsel is arguing that it's an abusive discretion standard. What's your position on that? I believe it's de novo. I believe the issue on review is whether or not the $275,000 in question is being characterized as income, as opposed to disputing how the court has allocated the income. So it's a termination, interpretation of a statute, which traditionally would be de novo. Correct. Okay. Proceed. This court's ruling in Colangelo tells us that stock awarded pursuant to a judgment of dissolution is in fact becomes income when it's later converted to cash. That case is different because it was awarded as part of a dissolution. This was a gift that was given well before the divorce was even filed, correct? That's true. It was never part of the marital estate. And speaking of the marital estate, who drafted the marital settlement agreement? I believe I did, so counsel, first. And in the marriage settlement agreement, in Article Provision 8, you listed the stock as something that would not be touched by the petitioner. That's correct. And I think that in reviewing the case law, I think that there's sort of a muddling of issues going on. That's the reason there's no case that really controls the outcome of this case, because it is so different. Your client also executed the document for the sale of the shares back to the corporation, correct? As an officer of the corporation, correct. She executed the document, whether it's as officer of the corporation. She executed the document, correct? She did. And she was paying – did she stop paying or try to stop paying maintenance when he sold the stock? No. She continued to pay maintenance? Yes. She didn't come in to try to reduce maintenance because, you know, he had a change in circumstance, more income? No. So she didn't treat it as income for maintenance, but you're trying to treat it as income for – and I understand the difference – for child support, correct? Yes. Does she want a 20 – does she want that 20 percent in a lump sum payment? I don't think we reached that. I think that, you know, if the case were remanded, that would be something for the court to determine, whether he was able to pay it in a lump sum payment at this point. The court could also deviate, depending upon the circumstances, if there are – I don't know what the husband's financial situation is, but the court would have discretion as to how it would be paid and whether it was going to be the 20 percent. Or is that fixed because the marriage settlement agreement says it's going to be 20 percent and the statute says it's 20 percent? No, I mean, I don't think child support can ever be fixed by a marital settlement agreement. That's always up to the court. So you're going to argue on remand, if we were to agree with you, that the 20 percent is binding on the trial court? I'm sorry, could you – The 20 percent. If we were to agree that it's income, you're not going to suggest that that's binding on the trial court? What I would suggest is that Mr. Marsh did not make any argument at the trial court level that if it were to be found income, that there should be a deviation. Well, it's a little premature, that, isn't it? Because we haven't decided that question yet. Counsel, let me ask you another question while we're on the issue of constituting income. Was the respondent required to claim this money on his federal income tax return? I believe the respondent is, for federal tax purposes, claiming that he didn't receive any income. Does that bear on the issue at all in your opinion? Well, again, my argument is that the trial court improperly applied this increase in net worth standard. I don't think the case law supports that. So I think what we need to look at for child support, because we're not talking about allocation of property between the parties or maintenance, for child support we need to see actually what money did Mr. Marsh acquire? Because it is obviously money that enables him to pay child support. He's going to say, hey, this is on paper here. There was actually a technical loss of value of the stock. But let me ask you a very pointed question. What is your best case that you can cite this to that supports your argument? Which case that you believe is the closest, most analogous case to this case? I believe Colangelo, because it's, in fact, a sale of stock. And this court specifically said in Colangelo that it was the actual distribution that was the event that made it an income generating event. So that whether it was vested or unvested or awarded in the marriage or not awarded in the marriage, it was the distribution of those funds that converted that into income as opposed to a possession that was not available for the payment of child support. In addition to Colangelo, in the Klomp's case, which was where the payer of child support was awarded his pension in the divorce and then subsequently was ordered to pay portions of his pension as child support, that court analogized that if someone's awarded property in a divorce that includes accounts receivables, that may be part of the value, but that doesn't mean that when they actually convert them to cash, the accounts receivable, they receive the money, that they're not subject to child support payments. In this case, in my opinion, it doesn't matter if it was part of the marital estate or not part of the marital estate. When he converts this property to cash, that becomes an income event for the court to analyze. The statute incidentally, coincidentally, doesn't actually define income in this context, does it? Not in this context. Well, no. I mean, the statute defines net income. Right, but not income. Rogers defines income and then, of course, the subsequent interpretations of Rogers. I think the trial court was relying on McGrath incorrectly interpreting the Supreme Court's decision in McGrath to mean that there has to be an increase in value in any property for there to be an income-generating event for purposes of child support. And, in fact, what McGrath says is simply that withdrawing money from a savings account is not an income-generating event. Well, you know, the trial court dealt with this a little bit. The trial court said his wealth hasn't increased. When you're talking about a pension, the pension doesn't go down once you receive a payment. The pension is still there as long as you live. The pension is going to keep paying, so your wealth actually has increased. You still have your pension, plus you've just been paid. It's a little different. And the trial court, and it's the noble review if we agree with you, however, should we just completely ignore the trial court's analysis? The trial court said his wealth did not increase. He had the shares before. Now he has the cash, not the shares. There's no increase in wealth. And I think that's an incorrect analysis for purposes of child support. I don't think that case law supports the notion that you have to look at somebody's bottom line of all their assets, money, property, whatever there might be, and that there has to be an overall increase for there to be an income-generating event. What if he had taken the proceeds from that stock, and instead of depositing it in an account or whatever he did with it, what if he had taken that and bought another sizable share of stock in some other corporation? I think there still would have been an income-generating event. I think this is distinguishing- Does it want that to be equivalent to Baumgardner or other cases where you're just basically selling a house, buying a house? Taking stock out, the money out, purchasing new stock as a new investment. I think that's different because, again, we're looking at a spendable asset that can be used to support a child, whatever a child's needs might be. So when you liquidate an asset, then it becomes, you know, subject to child support payments. You know, after that, you can put it back in another asset, I suppose. I think in Anderson, the court ruled that that was the case, that he just sort of transmitted it into another investment. But in that case, it was an involuntary, I believe it was an involuntary sale of stock. In this case, Mr. Marsh chose, while he had a child support obligation, to liquidate an asset. And that was his choice. It wasn't an involuntary event like the Anderson case where the court ruled. Well, involuntary, that's a good question. Was he represented by counsel during the execution of the sale agreement? I don't know. Oh, yes. Actually, I'm sorry. I believe it was Mr. Filler, yes. So your position is relatively simple, reducing it to its simplest terms. You're saying courts have indicated income can be a gain, quote, unquote, increasing the wealth of the recipient. Your position is, hey, the stock ended up with $275,000 in his account. Obviously, it increased his wealth, sort of what you're saying, right? Well, I think that we need to distinguish between wealth and money because- Well, you have $275,000 coming in, you can argue it increased your wealth, increased your money. There's a monetary gain in the sense you now have access to money that you didn't have access to before. Correct. Trying to get the simplest argument. Something that can be used to support a child as opposed to a piece of paper. Is this a case of first impression, the facts of this case? Does it make it a case of first impression in Illinois? There may be some analogous cases out there. Well, I mean, I can't say that it's the first case that's come up that's asked the court to make a determination on what exactly income is. I mean with these facts, I don't mean- Oh, these facts? Well, certainly, I have not found a- Like I said, the closest case I found was the Colangelo case, which didn't match exactly. But I think the concept of liquidating an asset to cash is analogous to that case, even if the exact factual circumstances don't exist. Again, when you look at the definition given by the Supreme Court in Rogers, what it states is gains and benefits that enhance wealth and facilitate ability to support. There's been a lot of emphasis, and I think it started in the O'Daniel case in the 4th District, on this whole notion of increase in wealth. I think an enhancement of wealth could possibly be an increase. But in the context of child support, I would argue that an enhancement is a liquidation, something that makes money available to facilitate an individual's ability to pay child support. And with regard to Mr. Marsh's claim that he had no gain, I think the case law is well established that income for child support is a very different animal from what you're telling the government, what you're claiming to the government you have as income. The facts in this case are undisputed that Mr. Marsh received a check or funds, $275,000. He himself, through the only admissible evidence that he gave in the trial court, which was the affidavit of Barbara Glantz, conceded that he's not paying any taxes on this $275,000. So that leaves us with the entire $275,000 as potentially being accessible for calculation of child support. Prior to the sale, was he receiving annual dividends from the stock? My recollection of the facts in the record was that there may have been occasional dividends paid, but I don't know that they were annual or substantial. Are those dividends calculated into the original child support? I know there was an offset for the maintenance. No, that was based strictly on the employment he had at the time. And that's why we have a separate provision that provides that additional 20% from income from all sources. Counsel, you timed us up on the opening argument. You'll have an opportunity to address the court again in rebuttal. Thank you. Okay, thank you. Mr. Filner on behalf of the employee. Thank you. Good morning. May it please the court, counsel. As you can tell from our brief, we don't agree with Ms. Marshall. This was an instance where Mr. Marsh was awarded this stock in the divorce decree. It happened in May or June of 2012. The stock was sold in December of 2012, six months later. The trial court's opinion as to why there should not be any child support paid out of this is he did not see any evidence that the stock increased in value in that six-month period. Isn't that a question of law as to whether or not that conversion from the stock to the cash is income? I mean, there's no disputed facts, correct? Correct. So isn't that a question of law, which is de novo, and we're not bound by the trial court's finding? When I wrote the brief, I didn't think so. The more I read it preparing for argument, I tend to agree with it, yes. I appreciate you acknowledging that because I think it's pretty clear it would be de novo. Yeah, I think it is. It's a question of statutory construction. Yes. We have the evidence in record of the account that testified what the basis of this stock was. When the stock was sold, there was no income tax. There was no income. So Ms. Marsh's position is that every time property is sold, it becomes subject to child support. It's pretty simple. I mean, this stock was his asset. He sold it. Therefore, 20% of the proceeds should go to child support. But we have no statutory definition of income in general for purposes of child support. Correct. You've got case law that talks about a gain or increase in wealth. Let's look at this from a practical standpoint. Let's carry your logic out to its furthest extension. Let's say it wasn't $275,000. Let's say we have a case where a gentleman has $3 million in stock in this case. But the time of dissolution is unemployed, which makes the setting of child support difficult. So under your logic is he could sell the stock, have $3 million in his bank account to spend any way that he can, but say, well, I'm unemployed. Therefore, you can't use this to compute child support. Doesn't that strike you as a little troubling? I mean, those aren't our facts because Mr. Marsh was paying child support. I mean, in that case, let's say we have to look at the purpose of the statute, the purpose of obligations to support children, and carry it out to other contexts. Wouldn't that be a little troubling if somebody came to you and said, well, we can't do anything. He's a millionaire. He's going all over the world. But, you know, hey, he doesn't have a job now. So you can't reach this in computing child support. This is income. Doesn't this strike you as a little bizarre? Yes, it would be troubling if there wasn't any support for the children. But it could be if we announced a ruling here that under these circumstances, the stock is beyond the reach of child support computations. And if it is within the reach, he just never sells the stock? Yes, but he did it. I understand, but if the law is clear on this and he knows not to sell it, then he just holds on to it. Conversely, you could make the argument that if that $3 million worth of stock goes up in value, even though he hasn't sold it, he has had an increase in wealth, and maybe that should be subject to child support. We're not arguing that this property couldn't have generated income subject to property support. What we're arguing is that there was no income. Proceeds are different than income. And I think that distinction has to be made when you're talking about capital assets. But if you define income, again, as a gain that increases the wealth of the recipient, there's no question $270,000 of his bank account increased his wealth. No, he had $275,000 worth of stock. But he couldn't do anything with it. It didn't increase his wealth because he couldn't use it. He couldn't sell it. He couldn't use the stock to buy things. He couldn't borrow against it. No. Okay. What if he is opposed to stock? In the marriage settlement agreement, he got two vehicles, a Mercedes and a Honda, and he decides to sell the Mercedes for $80,000. Can he just keep that and not have that available for a child support payment? Again, if you are awarded property in a marriage, especially this quickly after the award, I don't think the sale of that asset, unless it's gone up in value, should be the subject of child support. The Baumgartner report dealt with that. The Baumgartner report? Baumgartner means bought another house. I'm sorry. Conversion from a fixed asset real estate to another home. This is different. You're selling something for a cash gain. It's cash that you can spend, and you're deciding not to spend it on your child. But the Baumgartner report mentioned, it didn't really deal with it, and I don't know what evidence they had in front of them, but the Baumgartner report mentioned that he had put capital into the house. And to a great extent, this was return of that capital. I don't have a problem if the court finds that the house in value had gone up during the time Mr. Baumgartner owned it and child support be paid on the profit. I don't have a problem with that concept. The problem is the fact that they're looking for gross proceeds, child support based on the gross proceeds. The Colangelo court dealt with that by the stock options, the unvested stock options. They became vested. One thing that's not clear in that case is whether or not when they sent it back on remand, was the determination for child support made based on the difference in value or the entire proceeds. That's not clear. But those unvested stock options would have had some value at the time they were awarded in the divorce. They went up significantly when they vested, and that's properly the subject of child support. But that's not the same situation as this. And I agree with the comment earlier. I think there aren't any Illinois cases really dealing with this issue. To me, this is an elegance of a self-employed person who has significant income but also significant expenses. You don't pay child support based on the proceeds. You pay based on the net income. And while I agree that the statute or the term income as used for the IRS shouldn't necessarily be the same as the state, I think that it's a good starting point. You have in previous court rulings when the court has considered what's income, they have excluded depreciation, which is a legitimate internal revenue service tax deduction. There's been other exceptions, and that's fine. But income is the best place to start as a definition that's already in place. If you want to include things like regular gifts and regular loans from family members like the – I think it was the Rogers case, actually. But if you want to include that type of events as income, that's fine, because essentially that court determined that he was working family members and they were avoiding the issue of income. But to completely divorce it from the concept of profit, basically I think then you would be getting away from the standard set in the Rogers case, which is an increase in wealth, an increase. And your question earlier dealt with is the fact that you have more cash now than you used to have an increase in wealth? No, it's just a different form of asset. Well, if you had exchanged other stock, maybe the concept is an increase in wealth where the monetary gain is now immediately accessible and can be used for any purpose. As long as it's in the form of stock, it can't be used for any purpose, obviously. You can't go into a store and buy something with the stock in that form, right? Right. But if you're looking out for the interest of the children, going back to your $3 million example, if that stock goes up $1 million in value and he never sells it, could that properly be the subject of child support? I would say no, because it's not accessible to them. You can't use it in that form. It's not paper. But once it's converted into something that can be used for any or all purposes, there is an increase in wealth that's immediately accessible, I think, under the Rogers case. And that's for us to decide, but it's different when it's in a paper form, I think. What would be your response to the argument also that as a matter of public policy, the state favors the support of children? And so in a closed case, does that weigh into it at all? Yes, sure. I mean, you have to honor the policy, but then again, if you're going to look at a public policy argument, you can look at all the facts of the matter. In this instance, Mrs. Marsh was paying maintenance to Mr. Marsh. That obviously implies a significant disparity in income. Both parties received the same amount of stock as part of the marital settlement agreement, so she had her own stock of that same value. Under certain circumstances, could some of the money be applied to child support? I could see that happening, yes. If there was no other assets and this man had $275,000, I agree. But these children were not being left destitute because he didn't pay any child support. Right, but remember, we announce a rule in the case of first impression in particular, we've got to announce a general rule to guide all cases. And we can't say, well, in this case, hey, they both had enough money, so hey, no harm, no foul, let's not worry about it. You unofficially can't do that. And obviously the public policy exception would have to be cut or carved out very carefully. But my position is that, again, proceeds are not income. I realize it converts, it makes it easier to pay child support, but they're not income. And if you adopt the position of Ms. Marsh, any inheritance or any gift received by anyone, if they sell it, would make it subject to child support because they have no basis. Let me ask you this. If we were to disagree with your position and agree that it is income for purposes of child support, what should our order be? That it is income? That it is income. Should the trial court make a determination as to what portion and how much and in what form those payments should be made? Well, I would have to ask more about what your ruling would be. Are you ruling the entire mall subject to child support? My question is if we determine that by selling that stock it became income available for payment, for child support payments, which is not inconsistent with the case law. The ability to, money, even though it was in some other form, if it's available to be paid out. You walk into Vegas with an empty pocket or with a pocket full of stock options, you sit down at a poker table, they say, you're out of here, you can't play with that. You walk to the table with cash, you can play now. I bet, I would bet if you walked into Vegas with $275,000 of vested stock, they'd let you play too. But, no, I would disagree that it doesn't, it's not consistent with the case law because you have cases where they're talking about return of capital. IRA money being returned was not necessarily subject to child support. Savings account assets being returned are not necessarily subject to child support. Capital that's being, just being reacquired or withdrawn isn't subject to child support according to the various cases. I think if you, if you award this based on 20% of the entire sales, I think you will open this up to a real problem because does that mean any time proceeds are received on an asset, the entire proceeds are subject to child support? That, that's difficult. So what are you then suggesting if we were to decide finally that it would be subject to, considered to be income for purposes of computing child support, what is your recommendation, if that's the position somebody says, okay, where do you go from here now, what are you recommending follows from that on a remit? Well, you would have, we would have to request that there be variance from the child support, the 20% obligation, especially in this instance where the child is already of age. But there would have to be some variance because you can't, you know, you talk about the tax burden and the ability to earn wealth and different things. If you pay 20% of all proceeds on every capital transaction, you'd have a lot of businesses would be in trouble. And they either wouldn't reinvest, wouldn't sell, or wouldn't be able to continue operations. Well, if it got remanded though, that would not prejudice your right to ask for variance, right, in any case. I agree. Okay. Counselor, your time is up on the argument. Thank you very much for your closing arguments. And Ms. Marshall, you may respond when you vote. Thank you. Briefly, I would like to point out that the argument here is not that any time you sell stock, the entire gross amount is subject to child support. It just so happens under the circumstances of this case, that is the argument. I think that proceeds from stock, either all of it is income, I mean, because there is that two-step process for the determination of child support. Is it income? If it is, then what percentage of the net is going to be paid out? So in this case, either it's all income or it's not. Again, I would like to point out that I think the court, the trial court, is sort of muddling this concept of allocation of property between the parties and division of marital assets and confirming non-marital assets and parties waiving any claim to those property between each other. That's a separate issue from child support. Counsel takes issue with the concept that any time a capital asset is sold, that there's potentially an income-generating event. And yes, there is, frankly, but I think that's why the statute gives the lower courts the ability to deviate. The question I ask about the sale of the car, that becomes income, doesn't it? I believe so. $80,000 in cash that you have from an asset that you were given in divorce is now income for purposes of child support, assuming the payments either there have been made or haven't been made. But you could come in and say, I'd like to have an increase. There's been substantial gain, substantial income available to the husband. And in that case, again, I wouldn't argue that it's the gross amount of the sale. It's not the whole thing. It's the net. And in this case, $275,000 happens to be the net because he's conceded he's not paying any tax on it. And the undisputed testimony is that he never paid anything out of pocket for it. So I would argue that based on that, in this case, the entire amount is net. But again, sale of a car, yes, the net gain, if it's in cash, would be subject to child support, practically speaking. I mean, every time somebody sells a car, is somebody going to go and seek child support? Probably not. I mean, practically speaking, the attorney's fees, whatever, wouldn't make it worthwhile. But if that were to happen, then obviously the court has that option of deviating based on the second step. We would just be determining whether it's this scenario, whether it's the sale of a car, is whether or not that would constitute income for purposes of the statute in setting child support. We don't calculate whether it's net, what the net is there or anything like that. That's going to be up to the trial court upon further arguments. We're just saying, look, this is income. You take it from there and calculate the child support payments, correct? Yes. If you're not buying my argument that they should have argued in the alternative the first time around, then yes, I agree. You're characterizing it as is it income or is it not income? Trial court, we believe it's income. Now you need to calculate the net, go through those two steps. The trial court said Thomas's wealth has not been increased, but that's really not the question. That's the crux of my argument. In McGrath, the recent case of McGrath, they specifically said there was no money, no addition of money. So I think for child support purposes, which is a very different animal from property distribution and maintenance, what do you have in your hands to spend? Okay, you've got money now to spend on your child. Do we go with the statutory guidelines or is there some reason to go up or down? And I don't have any further remarks if you don't have questions. Thank you very much. Thank you. I'd like to thank both counsel here for their arguments, good arguments here this morning. The matter will be taken under advisement, of course. A written disposition will issue in due course. We'll stand adjourned until the call of the next case. Thank you.